## Zellner *v.* Haddock Mining Company, Appellant.

Argued December 12, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Skinner,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY PARKER, J., February 1, 1940:

Frank Zellner met with a compensable accident on February 26, 1932, while employed by and on the premises of the defendant. Compensation for total disability was paid to him under an open agreement for 150 weeks when defendant petitioned the Workmen's Compensation Board for termination of the agreement, alleging

that the injuries suffered were confined to the loss of the industrial use of his left foot, and that he had been paid the full amount allowed by statute (Act of June 2, 1915, P. L. 736, §306 (c), as amended by Act of April 13, 1927, P. L. 186, 77 PS §513) for such an injury. A referee found that the claimant had not suffered the permanent loss of the industrial use of his foot, but that he was totally disabled until September 30, 1935, and partially disabled thereafter "to the extent of 40% loss of earning power." The board in an able opinion by its chairman affirmed the award and on appeal to a court of common pleas a judgment for the claimant was entered on that award. We are all of the opinion that the judgment must be affirmed.

(1) The defendant now contends that the injury is permanent and that the "sole cause of the disability claimed is due to the condition of the foot." From these premises its counsel argues that the claimant is only entitled to compensation for the loss of the industrial use of a foot. Admitting, for the sake of argument only, that no other part of the body is affected separate and distinct from the foot and that the partial disability he now suffers is permanent, the conclusion drawn is not correct. The flaw in the argument of appellant is due to the fact that the claimant has not lost permanently the use of his foot. Not only did no witness, professional or lay, venture the opinion that the claimant had lost permanently the use of his foot as that phrase is used in construing §306 (c), but referee and board on ample evidence found that he had not suffered such a loss. As we understand the argument of the appellant it does not even so contend, but suggests that because the injury is confined to the foot and the functioning of the foot and his partial disability is permanent, defendant is not liable for compensation after 150 weeks.

We have said again and again that where an injury is confined to a member of the employee's body but he

has not permanently lost the use of that member, he is not to be deprived of further compensation if he is partially disabled, but is entitled to compensation under §306 (b) for such partial disability: *Roveran v. Franklinshire Mills*, 124 Pa. Superior Ct. 119, 124, 188 A. 78; *Babcock v. Babcock & Wilcox Co.*, 137 Pa. Superior Ct. 517, 9 A. 2d 492; *Kerfonte ,v. Carrolltown Coal Co.*, 94 Pa. Superior Ct. 19. All of these cases and others to the same effect follow the reasoning of Mr. Justice SCHAFFER in *Berskis v. Lehigh Valley Coal Co.*, 273 Pa. 243, 116 A. 888.

Adopting the language used in *Massett v. Armerford Coal M. Co.*, 82 Pa. Superior Ct. 579, 583, to the facts in this case: "The expressions 'loss' and 'loss of the use' as used in section 306 (c) should be given their unrestricted and ordinary use; and the claimant's eye [foot] or the use of it, is not lost unless it is useless in any employment for which claimant is physically and mentally fitted." The fact finding body has found on sufficient evidence that claimant has not lost the permanent and total industrial use of his foot. He therefore cannot be compensated under §306 (c) for that section does not apply. He has suffered a compensable accident and under such circumstances he cannot be deprived of compensation. Sections 306 (a) and (b) are applicable.

(2) Appellant contends finally that the evidence was not sufficient to form a basis for fixing the amount of the loss of earning power. Incidental to that contention is the complaint that certain experts in surgery were permitted to express as a percentage their estimate of his loss of earning power with the suggestion that their opinion evidence should have been limited to stating the percentage of physical ability to labor that was lost by reason of the accident. While in some circumstances the last suggestion might have some merit, we are of the opinion that there was here sufficient evidence to support the finding made by the referee and the board.

The claimant appeared before the referee and de-

scribed his injury and afforded the fact finding body a fair opportunity to draw inferences as to the claimant's ability to find and keep employment. The professional experts described the injury and surgical treatment which he had received and expressed their opinions as to the chances of improvement and the extent to which his physical movements would be impeded both by permanent physical handicaps and by pain. It appeared that bones of the leg had been fractured and repaired but that he was at the time suffering from an "interference to the nerve supply of the outside of the left leg and foot"; that while there was apparently a good union in the femur and good motion in knee and hip joint, nevertheless the patient was unable "to voluntarily flex the foot" and had what is described as "foot drop". There was "evidence of a sciatic or external popliteal nerve injury. The tendon Achilles of the left foot is slightly short." One of the defendant's experts testified that claimant had a 10% disability from the accident in the use of his foot. One of claimant's experts said that his earning power was reduced 30% and another that it was reduced 50%. Dr. Coll testified that he could only do light selective work and that he could not do any of the ordinary work of a miner.

There was ample evidence from which the referee or board could form a fair opinion of the extent to which claimant's earning power had been reduced. In addition, the evidence of the experts as to the loss of earning power was received without objection. Such evidence, when admitted without objection, is not a nullity or void of probative force, but is to be given its natural probative effect as if it was in law admissible: *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 133 A. 819, 820. "A rule of Evidence not invoked is *waived*": 1 Wigmore on Evidence §18.

To testify as to loss of earning power an expert should have a reasonable knowledge of (1) the mental and

physical ability of the employee to work and the character of work the person could perform in his impaired condition, (2) the wages earned before the accident and unaffected by the accident, and (3) the state of the labor market in the vicinity at the time. While some medical or surgical experts, particularly those called from a distance, might not be competent to express an opinion as to the loss of earning power where the patient was only partially disabled, we have no doubt that it frequently occurs that local physicians may know not only the extent to which the employee's ability to work has been diminished by an accident, but may have as good a knowledge of the condition of the labor market as anyone else in the vicinity. Before an expert gives advice to a lay fact finding body his qualifications to express an opinion should be developed. It is not improbable that the very experts who testified on the subject of loss of earning power, if they had been examined on the subject, could have qualified to express an opinion. We deem the evidence describing the actual limitations of an injured claimant for compensation, if properly presented, of much stronger probative effect than the mere expression of opinion by experts in the form of percentage.

The fixing of the amount of compensation to be allowed for partial loss of earning power necessitates a finding of the percentage of loss. Appellant complains that the result reached amounts to a mere guess but the same criticism would apply to the well established rules of evidence and procedure followed in actions for assessment of damages in condemnation of real estate or on account of municipal improvements. In all such cases it is necessary to rely on the estimates of persons competent to speak to the subject and their opinions will of necessity vary.

Judgment affirmed.