## Grigula, Appellant, *v.* Bethlehem Mines Corporation et al.

310

Argued April 15, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*H. Russell Stahlman,* for appellant.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellee.

OPINION BY PARKER, J., June 24, 1940:

Joseph Grigula met with an accident on March 7, 1931, while in the course of his employment with defendant and as a result it was necessary to amputate his lower right leg below the knee. Thirteen days later claimant and defendant entered into a written agreement for compensation for 150 weeks for the loss of his foot under §306 (c) of the Workmen's Compensation Act (77 PS §513). Compensation was paid to him for 149 weeks and acceptance of the last payment was refused when tendered to him.

Claimant on February 15, 1935, filed a petition for modification of the original compensation agreement and on March 28, 1935, filed an amended petition to

modify and review that agreement. He alleged as a ground for such modification that he was imposed upon by the defendant in that he could not read or write in English and the agreement was not read to him nor an explanation given him concerning its contents; that he did not know the contents of the agreement until informed by his counsel on March 21, 1934; and that when he signed it he thought he was signing a paper so he could get a hypodermic to relieve him from pain he was then suffering. He claimed particularly that he did not know he was signing a compensation agreement and that he and the defendant both knew that at the time he signed it he was suffering from an injury to his back and shoulders, the effect of which injuries had so progressed that he was totally disabled when the petition was filed. After hearing, referee and board found there was no improper conduct or fraud on the part of defendant and that claimant had failed to show that his present increased disability was caused by the accident.

The board also held that claimant's petition was barred by the limitations of the act since it was not brought until more than a year after the expiration of the time which the agreement had to run. Since a consideration of the claim on its merits supports the judgment we shall not enter into a discussion of the bar of the statute of limitations. A discussion of the facts and law upon which claimant relies to show that his petition was presented in time would be long and involved, it would unduly extend the length of this opinion, and it would be of no profit to rehearse those facts.

Our revisory powers in cases of this class are limited to a determination of the questions whether there is competent evidence to support the findings and whether the law has been properly applied to them. A careful examination of the evidence convinces all of us that the judgment must be affirmed. Not only is there sufficient evidence to support the judgment, but the evidence

would not have supported a judgment in favor of the claimant. In our opinion the case is not a close one.

The claimant had upon him the burden of proof. As the case was presented he was dependent upon his own testimony to complete his proofs as to the two prime questions, to wit, that he was imposed on by defendant and that there was causal connection between the accident and the present disability for which he had not received compensation. Yet the sworn allegations in his petition with reference to fraud or imposition upon him were so at variance with his testimony at the hearing as to essential matters that his credibility was seriously affected. In fact, he admitted enough to defeat his claim when he stated that he was told he was signing a compensation agreement and that it was for a period of 150 weeks. Not only so, but the claimant produced an employee of the hospital where claimant was when he executed the agreement and she testified as to facts which the board found specifically to be as follows: "That Anna Sullivan, an employee in the office of the Mercy Hospital where claimant was confined, upon receipt of the compensation agreement herein involved from the defendant, went to the ward where the claimant was confined and explained to him that she had a compensation agreement for him to sign; that this agreement provided for compensation for 150 weeks for loss of his right leg. Claimant not being able to write, affixed his mark to said agreement; that the claimant knew at the time of the fixing of his mark to the agreement that it provided compensation for a period of 150 weeks for the loss of his right leg." The records of the hospital were also produced and the surgeon who attended him while there was called as a witness. This evidence showed that he did not have a hypodermic on the day the agreement was executed. He also admitted that no representative of the defendant was present when the compensation agreement was

signed. He was thus left without any facts to sustain his charge of fraud or overreaching.

With relation to causal connection between the accident and the present disability arising from the condition of his back, there was evidence upon the part of the defendant's experts that there was no causal connection but that his present condition was due to arthritis. His own experts did not give it as their opinion that the present disability was due to the accident. When we consider the degree to which the claimant's own credibility was affected by his testimony and the strength of the evidence produced by the defendant, we must conclude that there was not only sufficient evidence to support the conclusions reached by the fact finding bodies, but there was, to say the least, a decided preponderance of evidence against the claimant.

Judgment affirmed.